UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **JOHN ELLIS,** § | | **CIVIL ACTION NO:** |
| on behalf of himself and all § | | |
| other individuals similarly situated § | | 2:20-cv-02518 |
| § | | |
| *Plaintiff* § | | |
| **v.** § | | |
| § | | |
| **TULANE UNIVERSITY** § | | |
| § | | |
| *Defendant* § | | **JURY TRIAL REQUESTED** |

**CLASS ACTION COMPLAINT**

Plaintiff, **JOHN ELLIS**, by and through the undersigned counsel, brings this class action against Defendant, **TULANE UNIVERSITY**, hereinafter ("Tulane," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend the Tulane University for an in person, hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020, Summer 2020, and Fall 2020 semesters, and had their course work moved to online only learning.

2. Such individuals paid all or part of the tuition for an average tuition and fees that was around $26,380 per semester for undergraduate students, and mandatory fees for each semester of approximately $2,000 including an academic service fee of $1,400, an activity fee of $120, a campus health fee of $320, a recreation fee of $180, and other fees associated with specific classes and

services ("Mandatory Fees").

3. Tulane has not refunded any amount of the tuition or any of the Mandatory Fees, even though it has implemented online only distance learning starting in or around March 13, 2020.

4. Because of the University's response to the COVID-19 pandemic, on or about March 13, 2020, the University also stopped providing any of the services or facilities the Mandatory Fees were intended to cover.

5. The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 13, 2020 is a breach of the contracts between the University and Plaintiff and the members of the Class, and it is unjust.

6. In short, Plaintiff and the members of the Class have paid for tuition for a first-rate education and an on-campus, in-person educational experiences, including with all the benefits offered by a first-rate university. Instead, students like Plaintiffs were provided a materially deficient and insufficient alternative, which constitutes a breach of the contracts entered into by Plaintiffs with the University.

7. As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which are simply not provided.

8. This failure also constitutes a breach of the contracts entered into by Plaintiffs with the University.

9. Plaintiff seeks, for himself and Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the University closed and switched to online only learning.

10. Plaintiff seeks, for himself and the Class members, protections including injunctive

and declaratory relief protecting Class Members for paying the full cost of tuition and fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendants can actually safely provide.

**PARTIES**

11. Plaintiff John Ellis was an undergraduate student during the Spring 2020 semester. For the Spring 2020, Tulane charged Plaintiff approximately $26,380 in tuition and more than $1,900 in Mandatory Fees, including an academic service fee of $1,400, an activity fee of $120, a campus health fee of $320, and a recreation center fee of $180.

12. Plaintiff Ellis is a citizen of Boston, MA.

13. Plaintiff Ellis paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services.

14. Plaintiff Ellis has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

15. Defendant Tulane is a private university in New Orleans, LA that was founded in 1847. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs.

16. Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country. Its campus is located in New Orleans. Defendant is a citizen of Louisiana.

**JURISDICTION AND VENUE**

17. This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C.

§ 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

18. This Court has personal jurisdiction over Defendant because it resides in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

## FACTUAL ALLEGATIONS

20. Plaintiff and Class Members paid to attend Tulane's Spring and Summer 2020 semesters including tuition and the Mandatory Fees. The Spring 2020 semester started on Jan. 13, 2020 and ended on April 28, 2020.

21. Tuition at the University was approximately $58,850 per year for undergraduate students, at least $1,900 in fees, and similar such charges for graduate students.

22. Plaintiff and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.

23. Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiffs.

24. The University has not held any in-person classes since March 13, 2020 for undergraduate students. All classes since March 13, 2020 have only been offered in a remote online format with no in-person instruction or interaction.

25. Most of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person

commencement.

26. Tulane has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

27. Students attending Tulane's Spring 2020, Summer 2020 and Fall 2020 semesters did not choose to attend an online-only institution of higher learning, but instead chose to enroll in the University's in-person educational programs - with the understanding that Tulane would provide in person educational opportunities, services, and experiences.

28. On its website, Tulane markets its University's on-campus experience and opportunities as a benefit to students.

29. The online learning options being offered to Tulane's students are sub-par in several significant aspect as compared to what the educational experience afforded Plaintiff and the members of the Class once was. During the online portion of the Spring and Summer 2020 semesters, Tulane used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

30. The online formats being used by Tulane do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams. Further, the ability to receive a Pass-Fail grade rather than a letter grade provides educational leniency that the students would not otherwise have with the in-person letter grading education that was paid for and expected.

31. Students, like Plaintiff, have been deprived of the opportunity for collaborative

learning and in-person dialogue, feedback, and critique.

32. Access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a college education.

33. Access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

34. Tulane priced the tuition and Mandatory Fees based on the in person educational services, opportunities and experiences it was providing on campus.

35. The University has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the semesters affected by Covid-19.

36. The University refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

37. Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed - or any other semesters affected by COVID-19.

38. Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

**CLASS ACTION ALLEGATIONS**

39. Plaintiffs bring this case individually and, pursuant to FRCP 23, on behalf of the class

defined as:

All persons who paid tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020, Summer 2020, or any other semester affected by Covid-19 at Tulane but had their educational experiences and class(es) moved to online only learning (the "Class").

40. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes if necessary before this Court determines whether certification is appropriate.

41. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23.

42. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, the University has reported that an aggregate of 7,900 or more undergraduate and graduate students were enrolled for the 2018-2019 school year. The names and addresses of all such students are known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

43. The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual members of the classes because Tulane has acted on grounds generally applicable to the classes. Such common legal or factual questions include, but are not limited to:

    a. Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the

semesters affected by Covid-19;

b. Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

c. Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020; and

d. Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

e. Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

f. The amount of damages and other relief to be awarded to Plaintiff and the Class members.

44. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the University stopped providing in mid-March.

45. Plaintiff is a more than adequate class representative. In particular:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b. because their interests do not conflict with the interests of the other Class members who he seeks to represent

c. They anticipate no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the

substantial costs and legal issues associated with this type of litigation.

46. Class members' interests will be fairly and adequately protected by Plaintiff and their counsel.

47. It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

48. Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP

23(b)(2) and (b)(3), at the appropriate juncture.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Class)**

49.Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein, including those made in paragraphs 1 through 45 above.

50.Plaintiff brings this claim individually and on behalf of the members of the Class.

51.By paying the University tuition and the Mandatory Fees for the Spring and Summer 2020 semesters, the University agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those semesters.  As a result, Plaintiff and each member of the Class entered into a binding contract with the University.

52.Tulane has held that its in-person educational opportunities, experiences, and services are of substantial value.

53.Tulane has agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

54.Tulane has promoted its in-person educational services as being valuable to students' educational experiences and their develop.

55.In marketing materials and other documents provided to the Named Plaintiff, Defendants promoted the value of the in-person education experiences, opportunities, and services that Defendants provided.

56.Defendants provided Plaintiffs with an acceptance letter that the Plaintiffs accepted based on the promise of in-person educational experiences, opportunities, and services that

Defendants would provide.

57. The University has breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the semesters affected by Covid-19, yet has retained monies paid by Plaintiff and the Class for a live in-person education and access to these services and facilities during these semesters.

58. Plaintiff and the members of the putative Class have therefore been denied the benefit of their bargain.

59. Plaintiff and members of the putative Classes have performed all of the obligations on them pursuant to their agreement - including by making such payments or securing student loans or scholarships to pay for such education.

60. Plaintiff and the members of the putative Class have suffered damage as a direct and proximate result of the University's breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid during the portion of time the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by the University.

61. The University should return such portions of the tuition and Mandatory Fee to Plaintiffs and each putative Class Member.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

62. Plaintiffs incorporates the allegations by reference as if fully set forth herein, including those made in paragraphs 1 through 58 above.

63. By paying the University tuition and the Mandatory Fees for the Spring, Summer

semesters, the University agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those affected semesters.

64. Defendants have retained the benefits of the amount of tuition and fees that Plaintiffs have provided - without providing the benefits that Plaintiffs are owed.

65. For example, Defendants failed to provide Plaintiff and Class Members access to any on-campus facility after March 13, 2020. Yet Defendants assessed Plaintiffs with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

66. Plaintiffs were not able to access such facilities or services remotely.

67. Plaintiffs paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Tulane have previously marketed, promoted, or made available prior to Covid-19.

68. Defendants have been unjustly enriched by Plaintiffs' payment of tuition and fees.

69. Despite not being able to provide such services, Tulane failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided and the reduced benefits associated with the fees.

70. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

71. Defendants act were unjust for them to keep money for services they did not render.

### THIRD CLAIM FOR RELIEF
### CONVERSION & TAKING OF PROPERTY
### (On Behalf of Plaintiff and the Class)

72. Plaintiffs incorporates the allegations by reference as if fully set forth herein,

including those made in paragraphs 1 through 68 above.

73. Plaintiffs have made financial arrangements that required Defendants to make payments before Defendants provided services.

74. Defendants accepted Plaintiffs' monies with the express understanding that the University would provide in-person educational experiences, opportunities, and services.

75. The University was unable to perform such services or provide such experiences and opportunities.

76. The University has converted Plaintiffs' property into their own property without just compensation.

77. Just compensation would have been the in-person services, opportunities, and experiences that the University has touted, marketed, and advertised as important and essential to the quality of education that Plaintiffs should have received.

78. It is inequitable for the University to convert such funds into its own profits despite the failure to provide such services, experiences, and opportunities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

a. For an order certifying the Class under the FRCP and naming Plaintiffs as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For compensatory damages in an amount to be determined by the trier of fact;

d. For an order compelling disgorgement of the ill-gotten gains derived by Defendant

from its misconduct;

    e.    For an order of restitution and all other forms of equitable monetary relief;

    f.    For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

    g.    For an order awarding pre- and post-judgment interest on any amounts awarded; and,

    h.    For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demands a trial by jury of any and all issues in this action so triable of right.

Dated: Aug. 3, 2020        RESPECTFULLY SUBMITTED,

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

THE SULTZER LAW GROUP, P.C.
Jason P. Sultzer, Esq.
Adam Gonnelli, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460
sultzerj@thesultzerlawgroup.com
agonnelli@thesultzerlawgroup.com
jfrancise@thesultzerlawgroup.com

LEEDS BROWN LAW, P.C.
Jeffrey K. Brown, Esq.
Michael A. Tompkins, Esq.
Brett R. Cohen, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

COUNSEL FOR PLAINTIFF AND THE CLASS